**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| | : | |
| ALKESH PATEL, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| Counter-Defendant, | : | |
| | : | |
| v. | : | No. 14-2949 |
| | : | |
| PRATIK PATEL, | : | |
| | : | |
| Defendant | : | |
| Counter-Plaintiff. | : | |
| | : | |

_____

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                              **MAY  25, 2016**

Presently before this Court is the Renewed Motion For Judgment as A Matter of Law and

Motion in the Alternative for a New Trial filed by Counterclaim Defendant, Alkesh Patel

("Alkesh" or "Defendant"), the Response in Opposition filed by Counterclaim Plaintiff, Pratik

Patel ("Pratik" or "Plaintiff"), Defendant's Reply to Plaintiff's Opposition, and Plaintiff's

Surreply.  For the reasons set forth below, Defendant's Motion is denied.

## I.    BACKGROUND

Defendant initially filed a Complaint for Assault and Battery against Plaintiff regarding a

physical altercation that took place at the Asian American Hotel Owners Association's

("AAHOA") Annual Convention and Trade Show held at the Philadelphia Convention Center on

March 22, 2014.[1]  (See Compl.)  On June 2, 2014, Plaintiff filed an Amended Answer to

Defendant's Complaint with New Matter and Counterclaims alleging Assault and Battery,

---

[1] On May 23, 2014, the case was removed from the Court of Common Pleas, Philadelphia County, pursuant to 28 U.S.C. § 1332 based upon diversity jurisdiction.  See 28 U.S.C. § 1332.  On May 26, 2015, Plaintiff filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 37(b).  (Doc. No. 18.)  On July 7, 2015, we granted the Motion dismissing Defendant's Complaint with prejudice.  (Doc. Nos. 21-22.)

Intentional Infliction of Emotional Distress, Defamation, Trade Libel and Commercial Disparagement, False Light, and Conspiracy.  (Doc. No. 3.)

On June 17, 2015, we granted Plaintiff's unopposed Motion to Deem All Averments Admitted in his Request for Admissions propounded on Defendant on March 16, 2015.  (Doc. No. 20.)  Subsequently, on November 4, 2015, we granted Plaintiff's Motion for Summary Judgment as it pertained to his Counterclaims for Assault and Battery and Defamation.  (Doc. No. 25.)  A three-day damages trial on Plaintiff's Counterclaims began on February 8, 2016, and ended on February 10, 2016.  On February 10, 2016, judgment was entered in favor of Plaintiff in the amount of $1,322,500.00.[2]  (Doc. No. 48.)

Presently before this Court is Defendant's Renewed Motion for Judgment as a Matter of Law and Motion in the Alternative for a New Trial ("Post-Trial Motion").  (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial.)  Defendant contends that his Renewed Motion for Judgment as a Matter of Law should be granted via Federal Rule of Civil Procedure 50(b) because Plaintiff did not offer evidence legally sufficient to support the $1.3 million dollar verdict.  (Id. at 5.)  Alternatively, Defendant contends that a new trial should be granted under Federal Rule of Civil Procedure 59(a)(1)(A) for several reasons including: (1) the gross negligence of Defendant's Trial Counsel; (2) the enhanced video was prejudicial and should have been excluded; (3) the jury was improperly charged on liability during the damages-only trial; and (4) Defendant was prejudiced when Plaintiff's counsel repeatedly called Defendant a "liar" to the jury.  (Id. at 8-19.)  Defendant also moves to withdraw each of his admissions to avoid unfair prejudice.  (Id. at 11-16.)  In addition, Defendant contends that the punitive damages

---

[2] Defendant's current counsel entered their appearance on March 9, 2016, and filed this Motion.  (Doc. Nos. 54-55.) Defendant's trial counsel, Joseph Vacarro, Esq. ("Trial Counsel"), attempted to withdraw from his representation of Defendant on March 7, 2016; however, we denied the motion.  (Doc. Nos. 52-53.)

award is "grossly excessive," and we should order a remittitur of the punitive award or, if Plaintiff refuses to accept a reduction, a new trial.  (Id. at 20.)

## II.   **STANDARDS OF REVIEW**

### A.  **Renewed Motion for a Judgment as a Matter of Law**

The grant of a motion for judgment as a matter of law after trial is warranted "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).  In considering the evidence, "the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."  Id.  "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability."  Id.

Under Federal Rule of Civil Procedure 50(a)(2), a party may move for judgment as a matter of law "at any time before the case is submitted to the jury."  If the court denies the pre-verdict motion, the movant may renew her motion within twenty-eight days after the entry of judgment.  Fed. R. Civ. P. 50(b).  "'Since the post-submission motion is nothing more than a renewal of the earlier motion, however, the party may not raise any new issue that she did not raise in her pre-verdict motion."  In re Prosser, 534 F. App'x. 126, 131 (3d Cir. 2013) (internal quotation marks omitted) (citing 9B Charles Wright & Arthur Miller, Federal Practice & Procedure § 2537 (3d ed. 2013)); see also Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 89 F.3d 976, 993 (3d Cir. 1996); Lightning Lube, 4 F.3d at 1172 ("[I]n order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and

specify the grounds for that motion.").  "Absent a motion in accordance with Federal Rule of

Civil Procedure 50(a), judicial reexamination of the evidence abridges [a party's] right to a trial

by jury."  Lightning Lube, 4 F.3d at 1172 (quoting Fineman v. Armstrong World Indus., Inc.,

980 F.2d 171, 183 (3d Cir. 1992)).  "To ask the court to enter a judgment, contrary to a general

verdict of the jury where no motion for a directed verdict has been interposed, is simply to ask

the court to re-examine the facts already tried by the jury, and this the court may not do without

violating the Seventh Amendment."  Lowenstein v. Pepsi-Cola Bottling Co., 536 F.2d 9, 11 (3d

Cir. 1976) (quoting Mutual Ben. Health & Accident Ass'n v. Thomas, 123 F.2d 353, 355 (8th

Cir. 1941)).

### B.  Motion for a New Trial

"The court may, on motion, grant a new trial on all or some of the issues - and to any

party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an

action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "Reasons for granting a new trial

may include the following: (1) there is a significant error of law, to the prejudice of the moving

party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against

the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial

effect on the jury."  Cradle of Liberty Council v. City of Phila., 851 F. Supp. 2d 936, 940 (E.D.

Pa. 2012) (citing Maylie v. Nat'l R.R. Passenger Corp., 791 F. Supp. 477, 480 (E.D. Pa. 1992)).

Determining whether to grant a new trial is within the sound discretion of the trial court.  Wagner

v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995).

A Rule 59(a)(1)(A) motion on the basis that the verdict was contrary to the weight of the

evidence should be granted only when "a miscarriage of justice would result if the verdict were

to stand."  Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006) (internal quotation marks

omitted); see also Marra v. Phila. Hous. Auth., 497 F.3d 286, 309 n.18 (3d Cir. 2007) ("[N]ew

trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."). This high standard is necessary "to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." Fineman, 980 F.2d at 211(internal quotation marks omitted).

A motion pursuant to Federal Rule of Civil Procedure 59(e) provides an additional basis for post-trial relief, and it "m[ay] rely on . . . the need to correct clear error [of law] or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

## III.  DISCUSSION

### A.  Renewed Motion for a Judgment as a Matter of Law[3]

Defendant failed to file a Rule 50(a) motion during the trial. Consequently, there is nothing to renew, and we refuse to address their Rule 50(b) Motion as doing so would violate Plaintiff's Seventh Amendment rights. See Lowenstein, 536 F.2d at 11.

### B.  Motion for a New Trial

#### 1.  *The Gross Negligence of Defendant's Counsel Warrants a New Trial*

Defendant argues that the verdict should be vacated, and the case be remanded for a new trial due to Defendant's Trial Counsel's continuous failures to communicate, comply with the

---

[3] We reject Plaintiff's contention that Defendant's Motion should be dismissed via Local Rule 7.1(e) for failure to order a trial transcript. Local Rule 7.1(e) requires that "within fourteen (14) days after filing any post-trial motion, the movant shall either (a) order a transcript of the trial by a writing delivered to the Court Reporter Supervisor, or (b) file a verified motion showing good cause to be excused from this requirement. Unless a transcript is thus ordered, or the movant excused from ordering a transcript, the post-trial motion may be dismissed for lack of prosecution." E.D. Pa. Loc. Civ. R. 7.1(e). Plaintiff contends that the trial order was not timely because it was made sixteen days after the conclusion of the trial. It is clear that Plaintiff is misinterpreting the rule. Defendant had fourteen days after he filed his Post-Trial Motion, not from the conclusion of the trial, to order a transcript. Defendant satisfied Local Rule 7.1(e) as he ordered the trial transcript on February 26, 2016, which was twelve days before he even filed his Post-Trial Motion. (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 1 n.1.)

rule of the court, file responsive pleadings, and preserve trial errors.[4]  (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 9.)  While we agree that the lack of participation on the part of Defendant's Trial Counsel was egregious, the remedy for such negligent conduct is a malpractice suit and not a new trial.  See  Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980) ("[T]he remedy in a civil case, in which chosen counsel is negligent, is an action for malpractice."); see also Nelson v. Boeing Co., 446 F.3d 1118, 1119 (10th Cir. 2006) ("[T]he general rule in civil cases is that the ineffective assistance of counsel is not a basis for appeal or retrial.").  This is the case because the Sixth Amendment right to effective assistance of counsel does not apply in civil proceedings.[5]  See Kushner, 620 F.2d at 408 ("[A]n aggrieved party in a civil case, involving only private litigants unlike a defendant in a criminal case, does not have a constitutional right to the effective assistance of counsel."); Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) (same).

The United States Supreme Court ("Supreme Court") has consistently held "clients [in civil actions] must be held accountable for the acts and omissions of their attorneys."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 397 (1993); see also Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) ("[P]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

---

[4] Defendant alleges that Defendant's trial "counsel failed to comply with every conceivable litigation deadline." (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 8.)  We acknowledge that Defendant did not respond to the Counterclaims, Requests for Production of Documents, Requests for Admissions, Motion for Sanctions, Motion to Compel, Motion to Dismiss, or Motion for Summary Judgment.  Defendant also alleges that his Trial Counsel did not respond to his requests for status updates and his pleas for information.  (Id.)

[5] We do recognize that The United States Court of Appeals for the Third Circuit ("Third Circuit") has carved out a limited exception for immigration cases to which the Fifth Amendment Due Process Clause guarantees aliens a constitutional right to effective counsel.  See Ponce–Leiva v. Ashcroft, 331 F.3d 369, 381–82 (3d Cir. 2003) ("[A]liens, like criminal defendants and unlike the parties in normal civil disputes, may obtain relief from the ineffective assistance of counsel.").

With the clear precedent before us, we do not agree with Defendant's contention that, under Hutton v. Fisher, gross negligence of trial counsel is grounds for a new trial. 359 F.2d 913 (3d Cir. 1966) (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 9.)  In Hutton, a guardian filed a personal injury complaint on behalf of a minor who suffered a serious injury.  Id. at 914.  Defendants' counsel asked the plaintiff's counsel for additional time to answer the complaint and was given oral reassurance that he could have some time.  Id.  A few months later, plaintiff's counsel assigned the case to a fellow associate.  Id.  The fellow associate was unaware of the previous oral agreement for the extension of time given to the defendants and filed an entry for default judgment.  Id.  The court entered a default and listed the case for trial to assess damages.  Id.

The plaintiff then subsequently moved to transfer the case to the nonjury list, but then a few months later, moved to place the case again on the jury.  Id.  All these judicial proceedings, besides the filing and serving of the complaint, were done ex-parte, and without notice to the defendants.  Id.  Nearly three years later, on the day before the trial, the defendants received notice from the court that a damages trial had been scheduled.  Id.  The defendants moved for a continuance because they were unprepared, but the motion was denied, and the jury returned a verdict in favor of the plaintiff in the amount of $195,000.  Id. at 914-15.  After the defendants' motion to set aside the default and the judgment was denied, they hired new counsel and appealed.  Id. at 915.

Hutton is not factually analogous to the facts before us for a couple main reasons.  First, Hutton involved an entry of default judgment while this case was decided by summary judgment. (Doc. No. 24.)  The Third Circuit specifically addressed its "reluctance to permit the final disposition of substantial controversies by default."  Id. at 916.  The Court decided that the case

was substantial and reiterated the defendants' contention that they could present a few defenses if

given the opportunity.  Id.  Also, the Court noted that "any doubt should be resolved in favor of

the petition to set aside the judgment so that cases may be decided on the merits."  Id.

Hutton also based their decision largely on the plaintiff's failure to proceed in the

litigation in an appropriate manner.  Id.  The court held:

> All of these circumstances considered, though original defense
> counsel may well have been the person most at fault in grossly
> neglecting this litigation, we think the plaintiff should not be
> allowed to take advantage of a default which would probably have
> been avoided or corrected had the plaintiff proceeded as could
> reasonably be expected or required at any of several stages of the
> litigation.

Id.  As the court noted, although the defendants' counsel may have been negligent for failing to

ask the court for an extension of time following opposing party's consent, the court focused its

attention on the plaintiff's actions.  The court did not want the plaintiff to take advantage of a

default which was due in large part from her failure to give defendants proper notice.  The

plaintiff had numerous opportunities to provide notice to the defendants, but failed to do so on

numerous occasions including: when default judgment was entered; when the plaintiff requested

a non-jury trial; when the plaintiff then requested a jury trial; and when the jury was selected.  Id.

at 915-18.  Thus, a new trial was ordered because of the actions of the plaintiff and not, as

Defendant contends, because of the negligence of the defendant's former counsel.  If we were to

interpret the Hutton holding in the way that Defendant argues, we would be forced to go against

the long history of both the Third Circuit and Supreme Court that has held a petitioner in a civil

trial has no constitutional right to effective counsel.  See eg., Pioneer, 507 U.S. at 397; Link, 370

U.S. at 633-34; Kushner, 620 F.2d at 408; Lu, 259 F.3d at 131.

8

Based on the consistent and unambiguous findings of both the Third Circuit and the Supreme Court, we find that Defendant does not have a right to effective counsel in a civil trial under the Sixth Amendment; therefore, any recourse for Defendant's counsel's negligence is in a malpractice suit as there are no grounds for a new trial. We admit that the conduct of Defendant's previous counsel goes beyond the negligence seen in earlier cases; however, the case law is clear that a party in a civil trial is bound by his or her attorney's acts or omissions, regardless of severity. See eg., Pioneer, 507 U.S. at 397; Link, 370 U.S. at 633-34.

### 2. Admissions Should Be Withdrawn

Under Federal Rule of Civil Procedure 36, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a). However, "the court may permit withdrawal or amendment [of admissions] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the party [requesting the admissions] in maintaining . . . the action on the merits." Fed. R. Civ. P. 36(b). "This standard, however, derives from situations in which the court permits withdrawal or amendment before trial has commenced." Amer. Automobile Ass'n. v. AAA Legal Clinic, 930 F.2d 1117, 1120 (5th Cir. 1991). "Once trial has begun, the provisions of [Federal Rule of Civil Procedure] 16(e), expressly incorporated by Rule 36(b), impose a more restrictive standard: the court will not permit withdrawal or amendment of an admission unless failure to do so would cause 'manifest injustice.'" Id. (citing Fed. R. Civ. P. 16(e)).

Generally, when a district court undertakes a prejudice inquiry under Federal Rule of Civil Procedure 36(b), they focus on the prejudice that the non-moving party would face at trial.[6]

---

[6] See Pritchard v. Dow Agro Sciences, 255 F.R.D. 164, 174 (W.D. Pa. 2009) (quoting Coca–Cola Bottling Co. of Shreveport, Inc. v. The Coca–Cola Company, 123 F.R.D. 97, 105 (D. De. 1988) (citation omitted) ("[G]enerally,

This is why courts enforce a higher standard and are more likely to find prejudice if the motion to withdrawal occurs during trial.  See Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007); AAA, 930 F.2d at1120; Brook Village North Associates v. General Electric Co., 686 F.2d 66, 71 (1st Cir. 1982).

Failure to reply to admissions can result in harsh consequences, but as the United States Court of Appeals for the Seventh Circuit explains:

> We recognize the potential harshness of this result. The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case.  This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure. In addition, the harshness is tempered by the availability of the motion to withdraw admissions, a procedure which the defendants did not employ.

In re Carney, 258 F.3d 415, 421 (5th Cir. 2001) (quoting United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987)).  Carney is applicable to the facts at issue here because Defendant's Trial Counsel simply did not comply with the procedural rules.  See id.  More importantly, at no time prior to this current Motion did Defendant seek to withdraw his admissions.  Defendant had ample opportunity to do so, but instead choose to go to trial and defend on the issue of damages.

We find this failure to request a withdrawal of admissions during trial creates an even tougher hurdle for Defendant.  There is scant case-law on point as very few attorneys would fail to see the importance of filing a request to withdraw or amend admissions before, or during, trial, but then subsequently attempt to so move post-verdict.  This is why we agree with Plaintiff that the case of AAA helps guides us.  930 F.2d 1117.  In AAA, the defendants failed to respond to

---

courts have defined prejudice as relating to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted."); see also Sonoda v. Cabrera, 255 F.3d 1035, 1039-40 (9th Cir. 2001) (holding, without further analysis, that the district court did not abuse its discretion by granting the Rule 36(b) motion to withdraw deemed admissions because the motion was made before trial and the nonmoving party would not have been hindered in presenting its evidence); Raiser v. Utah County, 409 F.3d 1243, 1247 (10th Cir. 2005) (finding no prejudice when the nonmoving party had relied on the deemed admissions for only a two-week period in preparing its summary judgment motion).

requests for admissions, and, subsequently, they were included as undisputed issues of fact at

trial.  Id. at 1118-19.  The defendants never before, or during trial, requested to amend or

withdraw the admissions.  Id. at 1119.  Nonetheless, in its Memorandum Opinion, the district

court *sua sponte* deemed one of the defendant's admissions to be withdrawn.  Id.  The United

States Court of Appeals for the Fifth Circuit ("Fifth Circuit") reversed the district court's

decision.  Id.  The Fifth Circuit noted that, since trial began, the higher standard of "manifest

injustice" was applicable; however, the court held that the district court's actions did not even

pass the less onerous Rule 36(b) standards.  Id. at 1120.  The court elaborated:

> To claim, as [defendant] does, that [plaintiff] was not prejudiced
> by withdrawal or refutation of the admissions after trial had been
> completed borders on absurdity.  Relying on the [defendant's]
> admission that confusion was likely, [plaintiff] made no effort to
> obtain or present evidence of actual confusion at trial.  The
> [defendant] argues that [plaintiff] was not prejudiced because it
> never offered any proof regarding the various factors normally
> considered in establishing "likelihood of confusion."  The very
> purpose of Rule 36, however, is to obviate the need to present
> evidence on a matter that has been admitted.  Because the
> [defendant] never moved for withdrawal or amendment of its
> admissions, [plaintiff] received no notice that such evidence might
> be required. . . . Here, the district court's *sua sponte* refutations of
> the admissions seriously prejudiced [plaintiff] by foreclosing any
> opportunity it might have had during the course of the trial to
> present its case or to demonstrate prejudice.

Id. at 1120-21.

We agree with Plaintiff that the AAA case is analogous to our facts.  Here, Defendant

never moved to withdraw the admissions during trial, so Plaintiff was never placed on notice that

he would be required to produce evidence of facts that were already deemed admitted.  Thus,

Defendant's argument that Plaintiff relied almost entirely on these admissions is inconsequential

as that is the purpose of Rule 36.  See id. at 1120 ("[T]he very purpose of Rule 36, however, is to

obviate the need to present evidence on a matter that has been admitted.")  Also, the fact that

Plaintiff relied heavily on these admissions further illustrates the highly prejudicial effect that would result if we were to withdraw them.  See Hadley v. United States, 45 F.3d 1345, 1348-49 (9th Cir. 1995) (citation omitted; internal quotation marks omitted) ("[O]nce trial begins, a more restrictive standard is to be applied in permitting a party to withdraw an admission, especially when the other party has relied heavily on the admission.").

Withdrawing these admissions would be severely prejudicial to Plaintiff as he relied on these admissions in the discovery process and at trial where he was not required to present evidence to prove the admitted facts.  Defendant argues that it is not prejudicial since both parties would be entitled to engage in full discovery before a new trial took place.  (Def.'s Reply at 8.)  Plaintiff obtained a jury verdict in his favor, and to argue that he would not be prejudiced when he is basically required to start a case over again borders on absurdity.  Plaintiff utilized valuable resources relying on these admissions and was never put on notice that they would possibly be withdrawn.  If Defendant brought a motion to withdraw before, or even during, trial it would have been much more persuasive.  This is not the "manifest injustice" that the Rule was intended to protect;[7] rather, this is just "manifest incompetence."  AAA, 930 F.2d at1121 (holding that the defendant's argument that he "forgot" to answer the admissions may constitute "manifest incompetence, but not manifest injustice").  Defendant had ample opportunity to defend the admissions and was put on direct notice of them on two major occasions, when they were originally sent to him and when the motion to declare them admitted was filed with this Court, but neglected to respond to either.  We agree that Defendant's decision not to file a motion to withdraw or amend the admissions before, or during, trial was a strikingly incompetent

---

[7] AAA, 930 F.2d at1121 (citation omitted; internal quotation marks omitted) ("Courts have, upon occasion, allowed withdrawals of admissions in extraordinary circumstances: where the admission was made in reliance upon incorrect information obtained from the other party; where the admitting party misconstrued the request; or where the admission was 'inadvertent' and the plaintiff was seeking damages of more than a million dollars.")

decision that severely hampered his defense.  However, Defendant's issues with his Trial

Counsel's decisions would, again, go to a malpractice suit and would not be grounds for a

withdrawal of admissions.[8]

### 3.  *The Enhanced Video was Prejudicial and Should Have Been Excluded*

We do not agree with Defendant's argument that the enhanced and edited video should

not have been shown to the jury because it was irrelevant to the damages-only trial, and, even if

relevant, it was unfairly prejudicial.  (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a

New Trial at 16-18.)  Evidence is admissible if it has a "tendency to make a fact more or less

probable than it would be without the evidence."  Fed. R. Evid. 401.  Although this was a

damages only trial, the video was relevant for the purpose of giving the jury a foundation for

determining the severity of the incident to more accurately calculate damages in a case that, most

importantly, involved a cause of action for battery.

The enhanced video was also not unfairly prejudicial.  Trial courts may exclude relevant

evidence "if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The fact remains that [Rule

403] does not offer protection against evidence that is merely prejudicial in the sense of being

detrimental to a party's case.  The rule protects against evidence that is unfairly prejudicial."

United States v. Johnson, 463 F.3d 803, 809 (8th Cir. 2006).  Defendant concedes that "if the

---

[8] We reject Defendant's contention that it should have been able to introduce evidence that contradicted the admissions as that would go against the very purpose of Rule 36.  See Fed. R. Civ. P. 36(b) ("[A] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."); Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 436 (E.D. Pa. 1978) (noting that the purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested); see also Advisory Committee Notes, at 48 F.R.D. 487, 534 (1970) ("[U]nless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured an admission, and the purpose of the rule is defeated.").  Thus, Rule 36 prohibits a party from offering evidence inconsistent with a party's response to a "request for admission."  See Keller v. United States, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995); AAA, 930 F.2d at 1120; 999 v. CIT Corp., 776 F.2d 866, 869 (9th Cir. 1985).

video was relevant to the damages analysis, only the original video should have been shown."
(Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 17.)  Thus, we will limit
our analysis to whether the enhanced video was unfairly prejudicial since we have determined
the video was relevant to the issue of damages.

The argument that the enhanced and sped up video makes the exchange between the
parties more heated, the fight appear more aggressive, or the walk across the room more
calculated is not compelling.  (Id. at 17-18.)  Any misconceptions that the jury may have had
based on the viewing of the enhanced video would have been corrected when they were shown
the entire, undoctored video.  Additionally, Defendant did not object at trial when the video was
shown repeatedly and originally agreed in a pre-trial hearing that "as long as the long version of
the video is shown to the jury, we will take no objection to showing both versions."  (Tr.
11/23/2015, p. 5:3-5.)  Eventually, Defendant did change his course of action and filed a motion
to preclude the video on the day of the trial.  (Doc. No. 43.)  We allowed the video to be shown
at trial to help the jury determine damages, and find no reason to come to an alternative
conclusion today as the video was relevant and not unfairly prejudicial.

### 4.   The Jury was Improperly Charged on Liability

Defendant contends that "the jury was improperly instructed on the charges for
determining liability for assault, battery, and defamation in a damages-only trial."  (Def.'s
Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 18-19.)  Defendant notes that no
objection was made during trial; however, the plain error doctrine applies.  (Id.)  We do
recognize that we can review jury instructions for plain error.  See Harvey v. Plains Twp. Police
Dep't, 635 F.3d 606, 612 (3d Cir. 2011) (citation omitted; internal quotation marks omitted)
("[A]n error constitutes plain error if: (1) [the error is] fundamental and highly prejudicial or if

14

the instructions are such that the jury is without adequate guidance on a fundamental question and (2) our failure to consider the error would result in a miscarriage of justice.").  However, besides his blanket assertion that an erroneous instruction occurred, Defendant fails to specify in any further detail about what instruction was given incorrectly.  Reviewing the jury instructions, we were unable to locate any instance of liability instructions being given.[9]  For these reasons, we do not find that the jury was improperly charged.

### 5.   *Inappropriate Remarks of Plaintiff's Counsel*

Defendant contends that a new trial is warranted because he was prejudiced by the Plaintiff's improper remarks during cross-examination and closing, which included calling Defendant a liar and stating he was guilty.  (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 19.)  Defendant has waived his right to move for a new trial on this ground; however, because we find no objection in the record by Defendant to Plaintiff's improper comments.  Defendant's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's cross-examination or closing remarks.  See Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998) (holding that "it is clear that a party who fails to object to errors at trial waives the right to complain about them following trial"); Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir. 1979) (holding that "[c]ounsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks").

---

[9]  We actually explicitly told the jury that liability had been established and it was just asked to set damages.  The instruction was as follows: "[t]he claims in this lawsuit are assault, battery, and defamation.  I've indicated to you that judgment has already been entered against the defendant as to those charges.  However, I'm going to describe them for you because you are going to be asked to set the damages for these offenses.  So I'm going to define each one of them for you."  (Trial Tr. 2/10/16, p. 7:8-14.)  After each charge was explained, we, again, reiterated that judgment had already been entered and the jury was just to decide the issue of damages.  (Id. p. 7:15—9:8.)

Nevertheless, the Third Circuit has recognized an exception for when a party fails to timely object, and will still review the matter if "exceptional circumstances" exist. Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992), cert. denied, 507 U.S. 1005 (1993) (citation omitted). Exceptional circumstances exist where a "manifest injustice would result" or where "counsel failed to object to a fundamental and highly prejudicial error resulting in a miscarriage of justice." Id. (citation omitted); see also Price v. Trans Union, L.L.C., 839 F. Supp. 2d 785, 806 (E.D. Pa. 2012) (noting that the plaintiff waived her right to move for a new trial by failing to timely object to the improper remarks; therefore, the court will not grant a new trial unless the defendant's misconduct resulted in a miscarriage of justice).

Under this heightened standard requiring a miscarriage of justice, we do not find that Plaintiff's improper remarks during cross-examination and closing warrant a new trial. In a damages only trial, Plaintiff's use of the term "liar" had minimal impact on the jury's verdict since liability had already been established and admissions had been read into the record. See Dunn v. Hovic, 1 F.3d 1371, 1377 (3d Cir. 1993) (noting that "at least for civil trials . . . improper comments during closing arguments rarely rise to the level of reversible error"). Also, we believe Plaintiff made a harmless mistake of confusing the criminal term "guilty" with the civil term "liable" as Defendant was found liable for all the claims to which the jury was to access damages. Additionally, this Court gave a curative instruction and informed the jury of the proper burden of proof.[10] See Christmas v. City of Chicago, 682 F.3d 632, 642 (7th Cir. 2012) (citation omitted) ("[A]n instruction to the jury stating that the arguments of counsel are not evidence can mitigate the harm potentially caused by improper statements made by counsel

---

[10] This Court instructed the jury that "statements by attorneys or questions by attorneys to witnesses, those are not evidence unless their [sic] made as admissions or stipulations." (Trial Tr. 2/10/16, p. 5:12-14.)

during closing argument."); NE. Women's Center, Inc. v. McMonagle, 689 F. Supp. 465, 471 (E.D. Pa. 1988).  Accordingly, we find Plaintiff's remarks did not rise to the level of a miscarriage of justice that is needed in order to warrant a new trial.

### 6.   *The Punitive Damages Award is Unconstitutional*

We do not agree with Defendant's contention that a new trial or, alternatively, a remittitur, should be granted based on what he claims is a grossly excessive punitive damage award that is in violation of the Fourteenth Amendment.  (Def.'s Renewed Mot. for JMOL and Mot. in the Alt. for a New Trial at 20.)  The jury returned a verdict in favor of Plaintiff in the amount of $675,000 in compensatory damages and $650,000 in punitive damages, which is a ratio of less than 1:1.  (Doc. No. 47.)  The issue is "whether the punitive damage award is so 'grossly disproportional' to the defendant's conduct as to amount to a constitutional violation." Willow Inn, Inc. v. Public Service Mutual Ins. Co., 399 F.3d 224, 230 (3d Cir. 2005) (citing Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 434 (2001)).

The Supreme Court has held that "courts reviewing punitive damages [should] consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  State Farm v. Campbell, 538 U.S. 408, 418 (2003) (citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996)).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  BMW, 517 U.S. at 575.  The Supreme Court has established factors to consider in determining the degree of reprehensibility as explained in State Farm:

17

the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.

538 U.S. at 419 (citation omitted).

Here, all but one of the factors are present. Defendant admitted, via the deemed admissions, the following relevant facts: (1) he threatened to slap Plaintiff; (2) he was intoxicated on the night of the incident; (3) he was the initial aggressor and put his hands around Plaintiff's neck and choked him; (4) he has been involved in physical confrontations in the past at AAHOA events; and (5) he knowingly made slanderous, libelous and premeditated statements to defame and destroy Plaintiff's personal and business reputation. (Doc. No. 19.) Defendant went on to file both a criminal and civil complaint against Plaintiff, which were both eventually dismissed. Plaintiff established at trial, via his expert witness, that the defamatory statements coupled with these civil and criminal complaints resulted in lost business opportunities and management fees to Plaintiff in the amount of $631,058. (Trial Tr. 2/9/16, pp. 36:22-37:17.)

Regarding the first factor, the harm caused to Plaintiff was both physical, i.e., the assault and battery, and economic, i.e., the defamation.[11] Defendant's verbal and physical attack of Plaintiff reflects an indifference to or a reckless disregard of the health or safety of others. There was no evidence presented at trial regarding the third factor, the financial vulnerability of Plaintiff. The fourth factor is also present as Defendant admitted that he has been involved in physical confrontations in the past at AAHOA events. Willow Inn, 399 F.3d at 232 (noting that

---

[11] The punitive damage award did not differentiate whether it was for the assault and battery or defamation; rather, it was just a lump sum award. (Doc. No. 47.)

the "repeated conduct" cited by prior Supreme Court cases "involved not merely a pattern of contemptible conduct within one extended transaction . . . but rather specific instances of similar conduct by the defendant in relation to other parties").  Regarding the last factor, Defendant admitted that he was the initial aggressor in the fight, and, subsequently, knowingly made false and slanderous statements in an attempt to destroy Plaintiff's business and personal reputation. Thus, four out of the five reprehensibility factors are present.

 "The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." BMW, 517 U.S. at 580.  Neither the Supreme Court, nor the Third Circuit, has adopted a particular mathematical ratio of punitive to compensatory damages that would be constitutional. Willow Inn, 399 F.3d at 233.  Although, the Supreme Court has indicated that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." State Farm, 538 U.S. at 425 (citing Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23–24, (1991)).  The Third Circuit explained that the "the ratio of punitive damages to the harm caused by the defendant is a tool to insure that the two bear a reasonable relationship to each other."  Willow Inn, 399 F.3d at 233–34.

The Supreme Court has cautioned that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."  State Farm, 538 U.S. at 425.  Accordingly, in cases of large compensatory awards, several courts have found a ratio between 1:1 and 2:1 to comport with constitutional restrictions.  See, e.g., Bridgeport Music, Inc. v. Justin Combs Pub., 507 F.3d 470, 487 (6th Cir. 2007) (holding that a ratio of closer to 1:1 or 2:1 is all that due process can tolerate where the $366,939 compensatory damage award was already substantial and only one of the

19

reprehensibility factors was present);  Williams v. ConAgra Poultry Co., 378 F.3d 790, 796–99

(8th Cir. 2004) (finding that conduct was not "egregiously reprehensible" enough to warrant a

ratio of 10:1; rather, due process requires the ratio be reduced to 1:1 because plaintiff already

received substantial compensatory damages in the amount of $600,000); Thomas v. iStar Fin.,

Inc., 508 F. Supp. 2d 252, 263 (S.D. N.Y. 2007) ("[T]he Court believes the [3:1 to 4:1] ratio in

this case is excessive because [plaintiff] was awarded a very substantial amount in compensatory

damages [$443,500], making a punitive award equal to the compensatory damage award more

appropriate.").

  The compensatory award of $670,000 is substantial, but the ratio to the punitive damage

award of 650,000 is less than 1:1.  This is crucial as courts in the past dealing with substantial

damages have reduced the large punitive awards to, at most, a 1:1 ratio to comport with the

Supreme Court's guidance in State Farm.  See, e.g., Bridgeport Music, 507 F.3d at 487;

Williams, 378 F.3d at 796–99; Thomas, 508 F. Supp. 2d at 263.  Under this guidance, the award

in this case already comports with the due process requirements.  See State Farm, 538 U.S. at

425 ("[W]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to

compensatory damages, can reach the outermost limit of the due process guarantee.").  A court in

another circuit held that a ratio of 1:1 or 2:1 was constitutional when only one reprehensibility

factor was present, so having four factors present here further supports the award.  See

Bridgeport Music, 507 F.3d at 487.

  The Third Circuit has held that remittitur, in the absence of clear judicial error or

pernicious influence, can only be granted if the verdict is so large that it shocks the conscience of

the court.  Kazan v. Wolinski, 721 F.2d 911, 914 (3d Cir. 1983).  If the court's conscience is

shocked, it may "remit the portion of the verdict in excess of the maximum amount supportable

by the evidence or, if the remittitur were refused, to submit to a new trial." Id.  We heard the

evidence presented at trial regarding Defendant's conduct and the effect it had on Plaintiff and

do not find the award to be shockingly high.  As noted above, the ratio here between

compensatory and punitive damages is less than 1:1 with four out of the five reprehensibility

factors being present.  Additionally, the jury was presented with overwhelming evidence in favor

of Plaintiff, and based its verdict on the numerous admissions of Defendant and expert

testimony.  Defendant's counsel presented no evidence at trial that contradicted the expert's

findings regarding Plaintiff's loss of management fees and business opportunities.  We cannot

remit an award that is supported by uncontradicted evidence and is also not shockingly high as it

is consistent with the expert's estimated damages.  Any argument that this substantial award was

due in large part to Defendant's counsel's negligence would, as discussed above, go to a

malpractice suit against his counsel and is no basis for a remittitur.

        The third guidepost in evaluating punitive damages, as outlined in State Farm, is not

relevant as there are no statutory or criminal penalties imposed under Pennsylvania law for

assault, battery, or defamation.  538 U.S. at 418.  We are aware that other courts have recognized

the limited applicability of the civil penalties comparison in the third guidepost, and, as a result,

have considered the verdicts awarded in comparable cases to be a part of the third BMW

guidepost.  See Mendez–Matos v. Municipality of Guaynabo, 557 F.3d 36, 55 (1st Cir. 2009)

(finding that a comparison of awards in similar cases is part of the third BMW guidepost);

Ondrisek v. Hoffman, 698 F.3d 1020, 1030 (8th Cir. 2012) (same); Kerwin v. McConell, No.

05–93, 2008 WL 4525369, at *7 (W.D. Pa. Sept. 30, 2008) (same).  However, the Third Circuit

has not addressed the issue, and, even if we were to consider comparable cases in the third

guidepost of BMW, the award would not be excessive in comparison to other defamation

cases.[12]   Therefore, we find no constitutional basis to interfere with the jury's verdict and remit

the $650,000 punitive damages award.

IV.   **CONCLUSION**

For the above mentioned reasons, we conclude that Defendant's Motion For

Judgment as A Matter of Law and Motion in the Alternative for a New Trial is denied.

An appropriate Order follows.

---

[12] See, e.g., Nanavati v. Burdette Tomlin Memorial Hospital, 857 F.2d 96 (3d Cir. 1988) (noting award of $100,000 in compensatory damages and $500,000 in punitive damages for defamation); Hudnall v. Sellner, 800 F.2d 377 (4th Cir. 1986) (upholding punitive damage award of $700,000 in defamation case); Armstrong v. Shirvell, 596 F. App'x 433 (6th Cir. 2015) (affirming jury award of $500,000 in punitive damages as it was not excessive in relation to $750,000 in compensatory damages for defamation); Bouveng v. NYG Capital LLC, No. 14-5474, 2016 WL 1312139 (S.D. N.Y. Mar. 31, 2016) (affirming $1,000,000 punitive award in defamation case).